NOT DESIGNATED FOR PUBLICATION

No. 129,070

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

LEON WHEATON JR.,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; JOSHUA BRUNKHORST, judge pro tem. Submitted without oral argument. Opinion filed July 24, 2026. Sentence vacated and case remanded with directions.

*Jacob M. Gontesky*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Kris W. Kobach*, attorney general, for appellant.

No appearance by appellee.

Before WARNER, C.J., ARNOLD-BURGER, J., and LAURA JOHNSON-MCNISH, District Judge, assigned.

PER CURIAM: Leon Wheaton Jr. was convicted of felony driving under the influence (DUI) after entering a nolo contendere plea. Wheaton had 10 prior DUI convictions and a significant criminal history. At sentencing, the court granted a dispositional departure because treatment was available yet expressly doubted its effectiveness. The State appeals, asserting that substantial and compelling reasons were not presented to support a downward departure from a presumptive prison sentence.

1

After reviewing the record and legal arguments in this case, we agree with the State, vacate Wheaton's sentence, and remand the case for action consistent with this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

On September 9, 2022, Wheaton was charged with his eleventh DUI—a felony under K.S.A. 8-1567(a)(5), (b)(1)(D). Pursuant to a plea agreement, he pleaded no contest as charged, and the court found him guilty.

The plea agreement provided that at sentencing, the State would recommend the standard sentence (middle of the grid box) and Wheaton was free to request a downward dispositional or durational departure. However, if probation was granted, then the parties jointly agreed to recommend the aggravated—or high number—in the grid box. In addition, Wheaton would serve 30 days of "shock time" in jail followed by 30 days of house arrest as a condition of probation.

At sentencing, the presentence investigation report showed Wheaton had a criminal history score of E and was presumptive prison. Wheaton's criminal history contained 37 total convictions, including 10 DUI convictions from 1989 through 2021. In addition, a special sentencing rule applied because he had committed the current offense while on probation for a prior felony DUI.

Pursuant to the plea agreement and Kansas Sentencing Guidelines, the State recommended Wheaton serve a standard 30-month prison sentence, arguing that probation was not appropriate for someone who has "gotten behind the wheel eleven times under the influence of some substance and has rolled the dice eleven times by putting himself and the public at risk each time."

2

Wheaton's defense counsel requested a departure based on two factors: (1) the availability of treatment programs to Wheaton and (2) his acceptance of responsibility. According to counsel, Wheaton was a U.S. military veteran and had once completed drug and alcohol treatment through the Veteran's Administration (VA) following a prior DUI conviction. Counsel acknowledged that Wheaton had difficulties submitting urinalyses, partly due to financial constraints, he failed to appear for some tests, and his most recent screening in February 2025 came back positive for methamphetamine. Counsel pointed out that while Wheaton's criminal history showed a long struggle with addiction, he could re-engage with the treatment resources offered by the VA if granted probation. Counsel also asserted that Wheaton had demonstrated an ability to maintain sobriety from alcohol since committing the current offense, and he welcomed the opportunity to show that he could engage in a treatment program rather than serving a prison sentence. Counsel added that it was "not lost on [Wheaton]" that he would be serving a prison sentence at 65 years of age if he failed to succeed on probation.

During allocution, the sentencing court inquired about Wheaton's prior treatment at the VA and his military service. The court began sentencing by expressing the belief that the State was "100 percent correct" and continued:

> "You have had eleven DUIs. Ten prior DUIs, and you've had enough. There are other judges in this courthouse who would say your first one could be a mistake, your second one might be a mistake, your third one is a problem, your fourth one you're lucky you didn't kill somebody. So you're playing Russian roulette every time you get a DUI. Eleven, I mean that is a public safety risk. There is no one in this courthouse that would say that it's not."

The sentencing court found that Wheaton had treatment programs available to him at the VA, but the court expressed doubt about the treatment's effectiveness, finding Wheaton was 65 years old and "[i]t's whether or not you want to change. . . . There is not a whole lot of changing left in your life. You're stuck in your ways. I'm sure you are."

3

The court then weighed public safety against the impact of prison on Wheaton, stating, "[D]o I just lock you up for close to two and a half years and ensure that the citizens of Kansas are not in danger because of your driving, which I also know that at your age may not go . . . very well for you." Next, the court reaffirmed the State was "100 percent correct" and Wheaton should be going to prison for every single day he deserved. After reaffirming the State's view, the court told Wheaton, "I'm going to give you one chance." Once the dispositional departure was granted, the court stated to Wheaton: "[Y]ou should be going to prison. I mean, I think you know that." Towards the end of sentencing, the court commented, "Everything [the State] has said is spot on. And eleven DUIs, you should just be serving time and you'd just be a number. And so I'm going to give you an opportunity, and [defense counsel] is correct, you screw that opportunity up, you're going to go to prison."

The sentencing court granted a dispositional departure based upon an available treatment program and incorporated treatment in probation conditions. The court also imposed 60 days of shock time as a condition of probation and an underlying prison sentence of 32 months, the aggravated sentence within the Kansas Sentencing Guidelines.

The State timely appeals.

DISCUSSION

THE SENTENCING COURT ERRED BY GRANTING A DISPOSITIONAL DEPARTURE

Essentially, the State argues that the sentencing court abused its discretion by granting Wheaton's request for a dispositional departure on his eleventh DUI based solely on the availability of substance abuse treatment. According to the State, Wheaton did not show he was actively engaged in treatment, and he had tested positive for methamphetamine a few weeks before sentencing. The State contends the court's decision

4

to depart was legally and factually erroneous and did not constitute a substantial and compelling reason to deviate from the presumptive sentence.

1. *The law on sentencing departures and appellate review.*

We start by summarizing applicable laws governing sentencing and appellate review. Sentencing is largely governed by the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-6801 et seq. The KSGA allows a court to depart from the presumptive sentence if it finds "substantial and compelling reasons" to do so and states those reasons "on the record at the time of sentencing." K.S.A. 21-6815(a).

A substantial reason to depart means it is "'real, not imagined, and of substance, not ephemeral.'" *State v. Morley*, 312 Kan. 702, 713, 479 P.3d 928 (2021). A compelling reason to depart is "one that forces a court—by the case's facts—to abandon the status quo and venture beyond the presumptive sentence." 312 Kan. 702, Syl. ¶ 4. On appeal, an abuse of discretion standard applies to determine whether a mitigating factor can provide a substantial and compelling reason to depart. 312 Kan. 708. And consistent with the abuse of discretion standard, the State bears the burden of showing the district court abused its discretion because it is the party asserting error. *State v. Peters*, 319 Kan. 492, 497-98, 555 P.3d 1134 (2024).

The KSGA provides a nonexclusive list of mitigating factors a sentencing court may consider in determining whether substantial and compelling reasons for a departure exist. K.S.A. 21-6815(c)(1). The courts can base their departure decisions on nonstatutory factors as well. When that happens, as here, appellate courts review a district court's departure decision using a three-step review that differs from the traditional abuse of discretion standard. The court considers (1) whether the district court's reliance on a nonstatutory factor was guided by an erroneous legal conclusion using an unlimited standard of review; (2) whether substantial competent evidence supported the factual

finding that the factor existed, i.e., an error of fact; and (3) whether a reasonable person would have taken the view adopted by the sentencing court. *Morley*, 312 Kan. at 711.

2. *The sentencing court did not make adequate findings to support departure.*

The State first argues that the court lacked substantial and compelling reasons to depart in a presumptive prison DUI case and erred by departing. At sentencing, the State pointed out that Wheaton's criminal history contained 37 total convictions, including 10 DUI convictions from 1989 through 2021. According to the State, Wheaton probably engaged in treatment during his last 10 DUIs. In this DUI case Wheaton (1) had a blood alcohol concentration of .04; (2) had methamphetamine and marijuana in his system; (3) had recently tested positive for methamphetamine while on bond; and (4) had failed to appear for some tests while on bond. The State asserted that given Wheaton's criminal history and bond performance, he was unlikely to succeed on probation.

The sentencing court recognized the public safety risk posed by Wheaton's criminal history and current DUI offense, stating, "Eleven, I mean that is a public safety risk. There is no one in this courthouse that would say that it's not." In contrast, the court articulated a single nonstatutory factor to explain its decision to grant Wheaton's departure request—Wheaton "ha[s] the treatment programs available to [him] at the VA." The court then weakened treatment as a departure factor, finding Wheaton was 65 years old and "[t]here is not a whole lot of changing left in your life. You're stuck in your ways. I'm sure you are." The court reaffirmed the State was "100 percent correct" and Wheaton should be going to prison for every single day he deserved. Yet, the court gave Wheaton "one chance" and departed from a presumptive prison sentence.

The sentencing court stated it "appreciate[d]" defense counsel's "comments" and that prison "may not go out very well" for Wheaton due to his age. Defense counsel offered additional reasons, including Wheaton accepted responsibility and had prior

6

treatment experience with sporadic success. Even so, K.S.A. 21-6815(a) requires the court to "state on the record at the time of sentencing the substantial and compelling reasons for the departure." Furthermore, a sentencing court must do more than simply allude to facts set forth in support of a departure request; the court must properly state its reasons for granting a departure. *State v. Whitesell*, 270 Kan. 259, 294, 13 P.3d 887 (2000). After the hearing, the court entered a journal entry of judgment, but no information is presented in the "Reasons Cited as Basis for Departure." The court's reasons for departure announced at the time of sentencing control over the written journal entry, but it bears mentioning the sentencing journal entry is silent. *State v. Jackson*, 262 Kan. 119, 135, 936 P.2d 761 (1997).

To capsulize our view, Wheaton's felony case, which involved his eleventh DUI and carried a presumptive prison sentence, posed public safety risks. Wheaton's conduct while on probation and bond does not lower that risk, and he committed the current offense while on probation for a prior felony DUI. On bond, Wheaton had difficulties submitting urinalyses due to financial constraints and also failed to appear for some tests. Wheaton's most recent screening in February 2025 came back positive for methamphetamine, and he also had methamphetamine in his system when he committed the current offense. Standing in contrast to the notable public risk in Wheaton's case, the sentencing court expressly doubted that one departure factor—treatment—would be effective.

Based upon the record in this case, we conclude that the sentencing court did not make adequate findings to support a downward departure. Because the court relied upon a nonstatutory factor, a three-step *Morley* review follows.

> a. *The mere availability of substance abuse treatment that the sentencing court doubts will be effective is not a substantial and compelling reason for departure in this case.*

The first step of the *Morley* analysis requires us to consider, using an unlimited standard of review, whether the court's reliance on a nonstatutory factor was guided by an erroneous legal conclusion. 312 Kan. at 711. The State argues that the mere availability of treatment in a felony DUI case is not sufficient departure criterion as a matter of law.

The Kansas Supreme Court has held courts can consider nonstatutory mitigating factors when deciding on a departure request if there is evidence in the record to support such factors and if their use is consistent with the legislative purposes underlying the KSGA. *State v. Hines*, 296 Kan. 608, 616, 294 P.3d 270 (2013). Those legislative purposes include: "(1) to reduce prison overcrowding; (2) to protect public safety[;] and (3) to standardize sentences so similarly situated offenders are treated the same." *State v. Bird*, 298 Kan. 393, 399, 312 P.3d 1265 (2013). Consistent with the third recognized purpose, the Kansas Supreme Court has explained that "[s]ince one of the purposes of the sentencing guidelines is to ensure uniformity in sentencing, departures should only be allowed in extraordinary cases." *State v. Eisele*, 262 Kan. 80, 90, 936 P.2d 742 (1997).

The State argues that no established precedent recognizes the mere availability of treatment as a valid nonstatutory mitigating factor for departure. That said, active rehabilitative efforts have been viewed as one factor supporting substantial and compelling reasons for departure, when combined with other factors. For example, in *State v. Crawford*, 21 Kan. App. 2d, 859, 860-61, 908 P.2d 638 (1995), this court affirmed the district court's downward departure based upon (1) Crawford's maturing age; (2) the young children Crawford was rearing; (3) Crawford's impressive employment record; (4) Crawford's rehabilitative efforts shown by a "Break Through" report; and (5) the sentence imposed upon a co-defendant (her husband) who was at least as culpable, if not more so, as substantial and compelling reasons.

Wheaton's case stands in marked contrast to *Crawford*, where active participation in treatment was one of multiple departure factors considered for departure. Further, this

is Wheaton's eleventh DUI, which the sentencing court expressly recognized as "a public safety risk." The court departed based upon Wheaton having VA treatment programs available. Yet, the court doubted treatment would be effective, finding Wheaton was 65 years old and "[i]t's whether or not you want to change. . . . There is not a whole lot of changing left in your life. You're stuck in your ways. I'm sure you are." The court twice affirmed the State was "100 percent correct" and Wheaton should be going to prison for every single day he deserved. Yet, the court granted a departure.

*Morley* requires us to consider whether the court's reliance on a nonstatutory factor was guided by an erroneous legal conclusion. 312 Kan. at 711. We hold that the sentencing court's reliance on a single nonstatutory factor—the mere availability of treatment that the court expressly doubted would be effective—was insufficient as a matter of law. This case presents a record of unique sentencing circumstances. We refrain from holding that the mere availability of substance abuse treatment is never a substantial and compelling reason for departure, as the State argues. But it was not a substantial and compelling reason for departure under these facts.

> b. *The unsworn statements provided substantial competent evidence to support the factual finding that treatment existed for Wheaton.*

The second step of the *Morley* analysis is whether the unsworn statements by Wheaton and his counsel supported the sentencing court's factual finding that VA treatment was available for Wheaton. 312 Kan. at 711. The State asserts that substantial competent evidence did not support that factual finding and thus the court committed an error of fact. Relying on *In re K.B.*, 48 Kan. App. 2d 155, 161, 285 P.3d 389 (2012), the State argues that "unsworn statements alone do not rise to the level of substantial

9

competent evidence in support of a factual finding" and that the unsworn statements here were insufficient to establish the availability of treatment.

Substantial competent evidence is legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. Smith*, 312 Kan. 876, 887, 482 P.3d 586 (2021). Contrary to the State's point, K.S.A. 21-6815(d)(3) authorizes sentencing courts to consider "written briefs and oral arguments of either the state or counsel for the defendant" to determine aggravating and mitigating circumstances. Accordingly, we hold there was substantial competent evidence to support the district court's finding that VA treatment did exist for Wheaton.

> c. *A reasonable person would not have viewed the mere availability of treatment alone as a reason for departure.*

The third and final step of the *Morley* analysis is whether a reasonable person would have adopted the view of the sentencing court. 312 Kan. at 711. The State argues that no reasonable person would have found that the overall circumstances of the case were substantial and compelling reasons for the court's departure, particularly because this was Wheaton's eleventh DUI. The State further contends that the factor for departure—available treatment—was weak and undermined by the court's equivocation of its effectiveness.

We will first review the overall circumstances of the case. At sentencing, Wheaton was presumptive prison. His criminal history contained 37 total convictions, including 10 DUI convictions from 1989 through 2021. In addition, a special sentencing rule applied because Wheaton had committed the current felony DUI while on probation for a prior felony DUI.

10

While on bond, Wheaton had difficulties submitting urinalyses, which he attributed to financial constraints, and failed to appear for some tests. Wheaton's most recent test, some two weeks prior to sentencing, was positive for methamphetamine. Wheaton's underlying DUI was due to a combination of alcohol, methamphetamine, and marijuana in his system.

The State points out that legislative bodies and the courts have recognized the special danger drunk drivers pose to other motorists and the public at large. See *State v. Mejia*, 58 Kan. App. 2d 229, 235, 466 P.3d 1217, *rev. denied* 312 Kan. 898 (2020). The sentencing court also recognized Wheaton's eleventh DUI posed a public risk, declaring, "Eleven, I mean that is a public safety risk. There is no one in this courthouse that would say that it's not." We agree with the State and the court. Wheaton's criminal history and current offense, an eleventh DUI, show a substantial public safety risk.

The sentencing court did articulate a reason for departure: Wheaton had treatment programs available to him at the VA. But the court expressed doubt about treatment's effectiveness, finding Wheaton was 65 years old and "[i]t's whether or not you want to change. . . . There is not a whole lot of changing left in your life. You're stuck in your ways. I'm sure you are." Any defendant could assert they were amenable to available treatment at sentencing to avoid imprisonment. Here, the court's comments at sentencing show the court did not expect treatment to change Wheaton's longstanding ways, as reflected by his criminal history and bond conduct. The court's sole articulated reason for departure—available treatment—was not real or substantive in this case. See *Morley*, 312 Kan. at 713. It was far from compelling. The reason given was not one that would force a court—by the facts of this case—to abandon the status quo and venture beyond the presumptive sentence. 312 Kan. 702, Syl. ¶ 4.

The State also points to the sentencing court's hesitance to place Wheaton on probation. The court recognized Wheaton's behavior posed a "public safety risk." For

11

example, the court stated, "[D]o I just lock you up for close to two and a half years and ensure that the citizens of Kansas are not in danger because of your driving." As previously noted, the court expressed significant doubt that treatment would change Wheaton's ways and made statements indicating that a departure was not warranted in this case. The court stated more than once the State was "100 percent correct" and Wheaton should be going to prison for every single day he deserved. Even after granting a dispositional departure, the district court stated to Wheaton, "[Y]ou should be going to prison. I mean, I think you know that."

This court has held that when a sentencing court hesitates to put a defendant on probation based upon (1) the defendant's criminal history and (2) the concern that new law violations will be committed on probation, then the case does not warrant substantial and compelling circumstances to depart from presumptive imprisonment. See *State v. Hess*, No. 126,975, 2025 WL 1155436, at *15 (Kan. App.) (unpublished opinion), *rev. denied* 321 Kan. 792 (2025).  Here, the court's comments throughout sentencing show concern for new probation violations posing a risk to the public. At the end of sentencing, the court commented, "Everything [the State] has said is spot on. And eleven DUIs, you should just be serving time and you'd just be a number. And so I'm going to give you an opportunity, and [defense counsel] is correct, you screw that opportunity up, you're going to go to prison."

We agree with the State. We hold that given the specific facts of this case, no reasonable person would agree that the mere availability of substance abuse treatment, which the court doubted would be effective, constituted a substantial and compelling reason to grant Wheaton's request for a departure from a presumptive prison sentence.

Sentence vacated and case remanded with directions.

12